ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| IVIS I. RUBERO PADILA<br><br>Demandante-Recurrida<br><br>v.<br><br>VERTICAL BRIDGE TOWERS, LLC Y OTROS<br><br>**PUERTO RICO TELEPHONE COMPANY, INC. H/N/C CLARO DE PUERTO RICO**;<br><br>Demandados-Peticionario | KLCE202301261 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2020CV02543<br><br><br>Sobre:<br><br>Daños y perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Marrero Guerrero y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de enero de 2024.

Comparece Puerto Rico Telephone Company H/N/C Claro de Puerto Rico (Claro o peticionario) y nos solicita que revoquemos la *Resolución* emitida y notificada el 12 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). En el referido dictamen, luego de evaluar una trilogía de pedimentos sumarios, así como las oposiciones, réplicas y dúplicas, el TPI denegó resolver el pleito del título por la vía sumaria. Justipreció que existían controversias de hechos materiales que impedían dictar una sentencia sumaria.

**I.**

La presente causa se inició el 19 de agosto de 2020, ocasión en que la señora Ivis I. Rubero Padilla (señora Rubero Padilla o recurrida) instó una *Demanda* contra el peticionario y los

---

[1] El Hon. José I. Campos Pérez sustituyó al Hon. Ángel R. Pagán Ocasio, por virtud de la Orden Administrativa TA-2023-212, emitida el 6 de diciembre de 2023.

demandados del epígrafe.[2] La recurrida solicitó una indemnización por los daños y perjuicios sufridos. Además, imputó temeridad a la parte demandada, luego de haber cursado, sin éxito, alrededor de una docena de reclamaciones extrajudiciales a través de su padre y representante, el señor Edwin Rubero Alvarado, por lo que peticionó una partida por concepto de honorarios de abogado.

En esencia, la señora Rubero Padilla alegó que la parte demandada era arrendataria de un predio comercial colindante a su propiedad, sita en la Calle Comerío de Bayamón. Indicó que el contrato de arrendamiento, suscrito el 30 de septiembre de 2016,[3] obligaba a responder al arrendatario y a toda persona natural o jurídica que subarrendara el inmueble, como era el caso de Claro. Explicó que, tras el paso del Huracán María, una torre de telecomunicaciones de más de cincuenta pies de altura, ubicada en el predio arrendado desde 2009, se desplomó sobre su propiedad y provocó severos daños ascendentes a $300,000. Ello causó que dejara de devengar $70,000 en ingresos por concepto del arrendamiento de parte de su propiedad.

Asimismo, señaló que la torre de comunicaciones, instalada a menos de quince pies de distancia de su predio, debió ser una provisional. Enunció que, luego del desplome, la parte demandada removió la torre y la sustituyó por una más segura, moderna y resistente. No obstante, en el proceso de construcción de la nueva torre de comunicaciones, se derribó una verja de su propiedad, la cual fue robada, junto a otras pertenencias y materiales de construcción que tenía almacenados, cuyo valor estimó en $3,000. La señora Rubero Padilla agregó que la parte demandada usó su contador de electricidad, por lo que tuvo que pagar la utilidad para

---

[2] Apéndice del recurso, págs. 1-13.
[3] El hermano de la recurrida, Edwin Rubero Padilla, arrendó a la parte demandada la propiedad donde ubicaba la torre de comunicaciones provisional. Previamente, el predio pertenecía al señor Rubero Alvarado.

evitar la suspensión del servicio y peticionó el resarcimiento de $5,000. Expuso también que la parte demandada, sin su consentimiento, instaló contadores en su propiedad, por lo que solicitó $50,000 en indemnización por los daños estructurales. Además, aseveró haber sufrido angustias mentales, resarcibles en $30,000.

La señora Rubero Padilla arguyó que, como la instalación de la torre de telecomunicaciones provisional no se rigió por los parámetros impuestos por las leyes y regulaciones estatales y federales, era previsible que podía desplomarse por un evento atmosférico y causar daños severos a las propiedades aledañas. Por lo tanto, imputó negligencia a la parte demandada por su incumplimiento a las leyes y reglamentos aplicables a la construcción, operación y mantenimiento de la torre. Adujo también que esa negligencia fue la causa próxima de que la torre se desplomara sobre su propiedad y causara los daños descritos. Asimismo, alegó que la parte demandada era solidariamente responsable al incumplir con el estándar de la persona prudente y razonable impuesto por el ordenamiento civil.

Vertical Bridge Towers II (VBT II) y Vertical Bridge S3 Assets (VBA) presentaron en conjunto su alegación responsiva.[4] Reconocieron el otorgamiento del contrato de arrendamiento, pero manifestaron no contar con información suficiente para constatar y contestar muchas de las alegaciones de la señora Rubero Padilla. Negaron que la torre de comunicaciones se desplomara e imputaron la causa de los daños a los vientos huracanados, por lo que invocaron el eximente de caso fortuito o fuerza mayor. Sobre las reclamaciones extrajudiciales, adujeron que no las habían encontrado y adujeron que la causa de acción estaba prescrita.

---

[4] Apéndice del recurso, págs. 30-37.

Claro instó *Contestación enmendada a demanda.*[5] Apuntó que no fue parte del contrato de 2016, por lo que sus cláusulas no le eran extensibles. De igual forma, reconoció que contrató con Vertical Bridge para alquilar un espacio para colocar equipo en la torre de comunicaciones. Negó haber incurrido en negligencia, al asegurar que los daños reclamados se debieron a fuerza mayor o un acto fortuito de la naturaleza. También rechazó que la torre de comunicaciones se desplomara sobre el inmueble de la señora Rubero Padilla. Expuso que los vientos huracanados arrancaron una montura con antenas de la parte superior de la torre, la cual cayó sobre una porción de un techo de aluminio existente en la propiedad de la recurrida. Invocó también la prescripción.

Así las cosas, el 11 de noviembre de 2021, VBT II y VBA presentaron una solicitud de sentencia sumaria, bajo el fundamento de prescripción.[6] En su oposición,[7] incoada el 21 de marzo de 2023, la señora Rubero Padilla rechazó que su causa de acción estuviera prescrita, al haber interrumpido el plazo de manera extrajudicial. A su vez, en su solicitud de sentencia sumaria contra la parte demandada, sostuvo que ésta había admitido la altura de la torre de comunicaciones y su ubicación cercana a su propiedad, en contravención al ordenamiento legal. VBT II y VBA replicaron y se opusieron a la petición de la recurrida;[8] e insistieron en que la torre de comunicaciones no se desplomó y que las regulaciones de las torres de comunicaciones comprenden excepciones para su ubicación. Unieron a su escrito cinco fotografías del área en controversia.[9] La señora Rubero Padilla presentó una dúplica y una

---

[5] Apéndice del recurso, págs. 38-56; véase, *Contestación a Demanda* a las págs. 14-25.

[6] Apéndice del recurso, págs. 57-73, *Solicitud de sentencia sumaria.*

[7] Apéndice del recurso, págs. 77-100, *Oposición a "Solicitud de sentencia sumaria" de Vertical Bridge y Contramoción de sentencia sumaria contra Vertical Bridge y Claro de Puerto Rico.*

[8] Apéndice del recurso, págs. 101-123, *Réplica a "Oposición a solicitud de sentencia sumaria de Vertical Bridge" y Oposición a "Sentencia sumaria contra Vertical Bridge y Claro de Puerto Rico".*

[9] Apéndice del recurso, págs. 124-128.

réplica, [10] en la que refutó el planteamiento de las alegadas excepciones en la ubicación de una torre de comunicaciones. La recurrida sometió, además, documentos juramentados en apoyo a su petición sumaria.[11]

Por su parte, el 5 de mayo de 2023, Claro presentó un escrito, mediante el cual se opuso a la sentencia sumaria de la recurrida y solicitó a su favor el dictamen sumario bajo el fundamento de ausencia de responsabilidad, al que unió unas fotografías aéreas de la zona.[12] En síntesis, esbozó como controversia la causa próxima de los daños alegados por la señora Rubero Padilla. En su análisis, planteó que los daños fueron causados por el Huracán María, por lo que no respondía por éstos al amparo de la doctrina de fuerza mayor.

La recurrida replicó y se opuso a la petición sumaria del peticionario. [13] Insistió que los daños fueron causados por la negligencia de la parte demandada. Fundamentó su postura en las disposiciones legales que rigen la ubicación de las torres de comunicaciones, independientemente de la zonificación del área.

En su dúplica y réplica,[14] Claro reiteró su defensa eximente de responsabilidad a base de las propias admisiones de la recurrida sobre los vientos huracanados. A esos efectos, invocó la doctrina de los actos propios. No obstante, la señora Rubero Padilla planteó en

---

[10] Apéndice del recurso, págs. 129-135, con anejos a las págs. 136-149, *Dúplica a réplica a "Oposición a solicitud de sentencia sumaria de Vertical Bridge" y Réplica a oposición a "Moción de sentencia sumaria contra Vertical Bridge y Claro de Puerto Rico".*

[11] Apéndice del recurso, págs. 150-151, con anejos a las págs. 152-165.

[12] Apéndice del recurso, págs. 166-179, con anejos a las págs. 180-183, *Moción i. En oposición a solicitud de sentencia sumaria presentada por la parte demandante ii. Solicitando sentencia sumaria a favor del compareciente por el fundamento de ausencia de responsabilidad.*

[13] Apéndice del recurso, págs. 184-192, *Oposición a segunda solicitud de sentencia sumaria de PRTC (Claro) y Réplica a oposición de PRTC a solicitud de sentencia sumaria.*

[14] Apéndice del recurso, págs. 193-209, con anejo a la pág. 210, *Moción i. Dúplica en relación a solicitud de sentencia sumaria presentada por la parte demandante ii. Réplica en relación a sentencia sumaria solicitada por la compareciente por el fundamento de ausencia de responsabilidad.*

su dúplica[15] que era distinguible la causa próxima de que *las antenas se desplomaran* y la causa próxima de que *las antenas se desplomaran sobre su propiedad*. Esto, debido a la presunta ubicación ilegal de la torre de comunicaciones.

Evaluados los escritos judiciales dispositivos, el 12 de octubre de 2023, el TPI dictó la *Resolución* recurrida, en la que consignó los hechos que halló incontrovertidos:

1) El 20 de septiembre de 2017, Puerto Rico recibió un impacto directo del Huracán María que causó estragos en toda la isla. El mismo fue uno de categoría 4. Los vientos máximos sostenidos fueron de 155 millas por hora. Los efectos de la fuerza de los vientos se extendió sobre todo Puerto Rico, en unión a lluvia copiosa extrema que produjo de grandes a catastróficas inundaciones y aguaceros repentinos.

2) Los vientos huracanados de María arrancaron una montura con antenas perteneciente a Claro de la parte superior de la torre de telecomunicaciones, donde estaba instalada dicha montura. Esta montura con antenas cayó encima de la propiedad de la demandante.

3) Los hechos por los cuales se reclama ocurrieron en septiembre de 2017. La demandante se enteró del desplome de la torre a los "pocos días" del Huracán María, cuando fue informada por su señor padre y su hermano.

4) La demandante, quien es residente de la Florida, le encomendó a su padre, el señor Rubero Alvarado, la tarea de iniciar trámites extrajudiciales para reclamarle a Claro y a Vertical indemnización por los daños que su propiedad sufrió como consecuencia de la caída de la antena y equipo de Claro, y otros daños emergentes.

5) La demandante había otorgado un poder o autorización escrita a favor de su padre, el 15 de mayo de 2011, para que este se ocupara de todo trámite relativo a su propiedad en Puerto Rico.

6) El señor Rubero Alvarado, en cumplimiento con la encomienda de su hija, contrató a la Lcda. Torres para la reclamación extrajudicial de los daños a Claro y Vertical.

7) La Lcda. Torres envió por lo menos catorce (14) comunicados a los demandados; por lo menos nueve (9) de ellos fueron dirigidos a Vertical.

8) El abogado actual de la demandante, Lcdo. Sevillano, envió un (1) comunicado extrajudicial, tanto a Claro

---

[15] Apéndice del recurso, págs. 211-217, *Dúplica a réplica de Puerto Rico Telephone Company h/n/c Claro con respecto a solicitud de sentencia sumaria.*

como a Vertical el 25 de febrero de 2020, en representación de la demandante.

9) El 19 de agosto de 2020, se presentó la demanda del caso que nos ocupa.

10) En la demanda se reclama que la propiedad de la demandante, ubicada en el #496 de la calle Comerío en Bayamón, sufrió daños.

11) Al párrafo número 25 de la demanda se alegó que desde el año 2017 hasta el 2020, la parte demandante le cursó a la demandada no menos de doce cartas legales extrajudiciales, reclamando lo mismo que en esta Demanda. Adicional a estas cartas legales, las partes sostuvieron varias conversaciones telefónicas e intercambiaron correos electrónicos, en torno a esta situación.

12) Al contestar la demanda, Vertical negó el párrafo 25 de la demanda y levantó de forma oportuna la defensa de prescripción. Igualmente levantó la defensa de caso fortuito o fuerza mayor.

13) En su contestación a la demanda, Claro levantó oportunamente la defensa de caso fortuito o fuerza mayor.

14) El 29 de marzo de 2017, Vertical le notificó al señor Edwin Rubero Padilla su dirección postal para dirigir toda notificación o correspondencia relacionada con el contrato de arrendamiento con fecha de 30 de septiembre de 2016 para la instalación de una torre de telecomunicación, ubicada en #494 Calle Comerio, Bayamón Zona Urbana, Bayamón, PR.

15) El señor Rubero Padilla es hermano de la parte demandante.

16) El señor Rubero Padilla era el propietario del terreno donde ubica la torre en cuestión para la fecha en que los vientos del Huracán María azotaron la torre. (#494 Calle Comerío).

17) La Parte Demandante tiene una propiedad comercial en el área aledaña a la propiedad arrendada por Vertical, cuya dirección es #496 Calle Comerío.

18) Se enviaron comunicados a Vertical en las siguientes fechas:

a) Correo electrónico del 12 de enero de 2018 […]
b) Correo electrónico enviado el 16 de febrero de 2018 […]
c) Correo electrónico del 20 de abril de 2018 […]
d) Correo electrónico enviado el 26 de noviembre de 2018 […]
e) Correo electrónico enviado el 13 de diciembre de 2018 […]
f) Correo electrónico enviado el 11 de abril de 2019 […]

g) Correo electrónico enviado el 9 de mayo de 2019 [...]

h) Correo electrónico enviado el 27 de mayo de 2019 [...]

i) Correo electrónico enviado el 16 de agosto de 2019 [...]

j) El abogado actual de la demandante, Lcdo. Sevillano, envió un comunicado extrajudicial a Vertical Bridge el 25 de febrero de 2020, en representación de la demandante.

19) La demanda instada el 19 de agosto de 2020, en relación con Vertical no se encuentra prescrita.

De igual modo, el TPI esbozó los hechos medulares aún en controversia:

1) Si la causa del presunto daño sufrido por la propiedad de la demandante fue la ubicación de la torre de telecomunicaciones sobre la propiedad o el Huracán María.

2) Si la caída de las antenas de Claro sobre la propiedad de la demandante era previsible y evitable.

3) Si el Huracán María y sus efectos, para propósitos de la presente demanda es un caso fortuito o fuerza mayor.

4) La altura exacta de la torre.

5) La ubicación exacta de la torre con respecto a la propiedad de la demandante y si la misma es conforme a la ley.

6) Si al momento de los hechos la zona donde se encuentra ubicada la torre estaba clasificada como una comercial, residencial o mixta.

7) La localización exacta y linderos de las propiedades colindantes a la torre incluyendo la de la demandante.

8) Si la parte demandada tomó las medidas o precauciones pertinentes respecto a la torre y sus antenas para prevenir daños que pudiera causar un fenómeno atmosférico.

9) Si la parte demandada le daban el mantenimiento requerido a la torre y sus antenas.

10) Si la instalación de la torre de Vertical y la antena de Claro se realizaron conforme a los parámetros legales.

11) La manera que la parte demandaba operaban la torre y sus antenas.

12) Si la parte demandada cumplía con el contrato de arrendamiento, relacionado a la instalación de la torre de telecomunicaciones.

13) Si tanto la torre de Vertical como la antena de Claro fueron instaladas con el consentimiento de la demandante.

14) Si la demandante expresó alguna queja por la instalación de la torre de Vertical y la antena de Claro.

15) Los daños, si alguno.

16) La responsabilidad y negligencia de las partes, si alguna.

Al tenor de los enunciados probados y los que aún están en controversia, el TPI denegó la resolución sumaria del pleito y declaró no ha lugar la trilogía de solicitudes. Concluyó que la reclamación no estaba prescrita.[16] Acerca de los otros asuntos, pronunció que existían controversias esenciales por dilucidar, así como elementos subjetivos, de credibilidad y negligencia, cuya complejidad justificaba la celebración de un juicio en sus méritos.

Inconforme, el 13 de noviembre de 2023, el peticionario presentó el recurso de *certiorari* que nos ocupa, mediante el cual imputó al TPI la comisión de los siguientes errores:

PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA A[L] CONCLUIR QUE EXISTEN CONTROVERSIAS DE HECHOS QUE IMPIDEN QUE AL CASO LE APLIQUE LA DEFENSA DE FUERZA MAYOR.

SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A APLICAR LA DEFENSA DE FUERZA MAYOR PARA EXIMIR DE RESPONSABILIDAD A LA PRTC.

El 20 de diciembre de 2023, la señora Rubero Padilla presentó *Oposición a expedición de auto de certiorari.* Con el beneficio de ambas comparecencias, nos pronunciamos.

**II.**

***El auto de certiorari***

---

[16] Una controversia sobre la prescripción, planteada por PRTC, fue atendida el 23 de marzo de 2022, por un panel fraterno en el caso KLCE202101227. A esos efectos el TPI expresó que VBT II y VBA pretendían relitigar la cuestión.

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). A diferencia de la apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de *certiorari* de manera discrecional. *García v. Padró, supra.* El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, que cita a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Por ende, la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera..." *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró, supra*, págs. 334-335.

No obstante, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra*, pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra*, pág. 335; *Pueblo v. Ortega Santiago, supra.*

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari*. En su parte pertinente, la norma dispone como sigue:

.    .    .    .    .    .    .    .

> **El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra** de una resolución u orden bajo las Reglas 56 y 57 o **de la denegatoria de una moción de carácter dispositivo**. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. **Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión**. (Énfasis nuestro).
>
> .    .    .    .    .    .    .    .

La regla procesal fija taxativamente los asuntos aptos para la revisión interlocutoria mediante el recurso de *certiorari,* así como aquellas materias que, por excepción, ameritan nuestra intervención adelantada, ya fuese por su naturaleza o por el efecto producido a las partes. *800 Ponce de León v. AIG, supra,* pág. 175.

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari,* nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de certiorari,* 4 LPRA Ap. XXII-B, R. 40. Así reza:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Claro está, **es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional**, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018), que cita con aprobación a *Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000); *Meléndez Vega v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

### *La sentencia sumaria*

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R.36, gobierna el mecanismo de la sentencia dictada sumariamente. Esta herramienta procesal sirve al propósito de aligerar la conclusión de los pleitos, sin la celebración de un juicio en sus méritos, **siempre y cuando no exista una legítima controversia de hechos medulares**, de modo que lo restante sea aplicar el derecho. Véase, *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001); *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). Así se propende a la solución justa, rápida y económica de los litigios de naturaleza civil en los cuales no exista una controversia genuina de hechos

materiales. *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2021). En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

La Regla 36.2 del mismo ordenamiento procesal, establece que la parte contra la cual se haya formulado una reclamación podrá presentar "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación". 32 LPRA Ap. V, R. 36.2. Por su lado, conforme la Regla 36.3 de Procedimiento Civil, *supra*, en su contestación, la parte promovida "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.3 (c). En suma, quien promueve la sentencia sumaria "debe demostrar que no existe controversia sustancial o real en cuanto a algún hecho material, es decir, en cuanto a ningún componente de la causa de acción". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110. A su vez, quien se opone a una sentencia sumaria debe presentar contradocumentos y contradeclaraciones que contradigan los hechos incontrovertidos por parte del promovente. *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 133 (1992). Asimismo, la Regla 36.3 de Procedimiento Civil, *supra*, establece unos requisitos de forma a ser cumplidos por la parte promovente y la parte promovida. 32 LPRA Ap. V, R. 36.3; Véase, *Pérez Vargas v. Office*

*Depot, supra*, pág. 698. Por consiguiente, el incumplimiento del promovente de estas formalidades acarrea que el tribunal no esté obligado a considerar su pedimento. *Meléndez González et al. v. M. Cuebas, supra*, pág. 111. En caso de que el promovido sea quien incumple dichos requisitos "el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho". *Id.*

Ahora bien, la sentencia sumaria sólo debe dictarse en casos claros. Por tanto, **cuando no existe una certeza prístina sobre todos los hechos materiales que motivaron el pleito, no procede que se dicte sentencia sumaria**. *Pérez Vargas v. Office Depot, supra*, pág. 699 y los casos allí citados. Por ser éste un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000). Siendo esto así, **sólo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia**". (Énfasis nuestro). *Meléndez González et al. v. M. Cuebas, supra*, págs. 109-110, que cita a *Const. José Carro v. Mun. Dorado*, 186 DPR 113 (2012). De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio. *Rivera et al. v. Superior Pkg., Inc. et al.*, *supra*, pág. 133.

En cuanto a la revisión de un dictamen sumario o la denegación de la resolución abreviada, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al

revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, así como si el derecho se aplicó de forma correcta. Esto es, **no estamos compelidos a adjudicar los hechos materiales esenciales en disputa**. *Vera v. Dr. Bravo, supra,* págs. 334-335. El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una de *novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas, supra,* pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id.* Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil y exponer concretamente cuáles hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde revisar *de novo* si el foro impugnado aplicó correctamente el derecho a los

hechos incontrovertidos. *Id.,* pág. 119. Al dictar una sentencia sumaria, este tribunal deberá realizar un análisis dual que consiste en: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo, supra,* pág. 333. Una vez realizado este análisis el tribunal no dictará sentencia sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho no procede. *Id.*, págs. 333-334.

### III.

En el caso de autos, la parte peticionaria arguye que el TPI erró al no resolver el pleito a su favor por la vía sumaria, al palio de la defensa de fuerza mayor.[17] Atribuye todos los daños alegados en la *Demanda* al siniestro atmosférico. Sin embargo, el peticionario hace abstracción de otras contenciones ajenas al Huracán María que no han sido refutadas. Por ende, en esta etapa de los procedimientos, la aplicación automática de una doctrina eximente es improcedente.

---

[17] El concepto de fuerza mayor se refiere al acontecimiento que no hemos podido precaver ni resistir; como por ejemplo la caída de un rayo o granizo, inundaciones o un huracán. Véase, *O.E.G., D.A.Co. v. Rivera, Cintrón*, 153 DPR 184, 192 (2001). Ahora, el demandado no necesariamente queda exonerado de responsabilidad. Se requiere la concurrencia de las siguientes condiciones: (a) hecho imprevisible o, aún previsto, inevitable; (b) imposibilidad absoluta o relativa de cumplimiento de la prestación; (c) inimputabilidad al deudor respecto al acaecimiento fortuito y sus consecuencias; y (d) realización de los actos necesarios tendentes a evitar la agravación de los efectos del evento fortuito. Francisco Soto Nieto, *El caso fortuito y la fuerza mayor: Los riesgos de la contratación,* Barcelona, Ediciones Nauta, 1965, a las págs. 31-106.

En la *Resolución* recurrida, el TPI desglosó las cuestiones que requiere desvelar para tomar una determinación fundada; entre éstas: la causa próxima de determinados daños alegados por la señora Rubero Padilla, para lo cual debe precisar la altura y ubicación de la torre de comunicaciones, la clasificación de la zona y si se cumplió o no con el ordenamiento legal. Asimismo, planteó como controversia si el desplome de la torre de comunicaciones, como aduce la recurrida, o la montura con antenas, como alega el peticionario, era previsible y prevenible. Además, el TPI esbozó que existen controversias sobre los daños aducidos por construcciones no consentidas y pérdida de materiales, entre otros. Añadió que es objeto de juicio la prueba de los daños, así como la presunta negligencia y responsabilidad de la parte demandada. Ciertamente, ante la ausencia de certeza sobre todos los hechos medulares que motivaron la *Demanda,* no procedía dictar sentencia sumaria, por virtud de una aplicación mecánica de la doctrina invocada por el peticionario.

Según expuesto, la Regla 52.1 de Procedimiento Civil, *supra,* nos faculta para revisar resoluciones dictadas por el TPI cuando se recurre de la denegación de una moción de carácter dispositivo. No obstante, de conformidad con la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* el *certiorari* será expedido si, al menos, alguno de sus criterios está presente, de manera que se justifique la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la Regla 40, *supra,* se impone nuestra intervención. De no ser así, procede que nos abstengamos de expedir el auto solicitado y que se continúen los procedimientos del caso sin mayor dilación en el tribunal impugnado.

Examinado el dictamen impugnado y las cuestiones aún en controversia, opinamos que no se observa ninguno de los criterios establecidos en la Regla 40, *supra.* No vemos que, en el amplio y riguroso análisis realizado a las posturas de los litigantes, el TPI haya incurrido en abuso de discreción o actuado bajo prejuicio o parcialidad. Tampoco se demostró que se haya equivocado en la interpretación o aplicación de la norma procesal y que, intervenir en este momento, evitaría un perjuicio sustancial contra el peticionario. Igualmente, debemos favorecer la robusta política judicial a favor de que los casos se ventilen en sus méritos y que no se prive a una parte de su día en corte. [18] Consecuentemente, no nos vemos persuadidos a pronunciarnos en esta etapa de los procedimientos. Ante la falta de abuso de discreción, parcialidad o prejuicio en el dictamen emitido y dentro de nuestra discreción, no encontramos una razón que justifique nuestra intervención en el presente caso.

**IV.**

Por los fundamentos antes expuestos, denegamos la expedición del recurso de *certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] Véase, *VS PR, LLC v. Drift-Wind,* 207 DPR 253, 264 (2021); *Cirino González v. Adm. Corrección et al.,* 190 DPR 14, 49 (2014); *Banco Popular v. SLG Negrón,* 164 DPR 855, 864 (2005); *Valentín v. Mun. de Añasco,* 145 DPR 887, 897 (1998).